The Direct Transportation Co., Appellant, *v.* The Baltimore & Ohio Rd. Co., Appellee.

(No. 4374—Decided November 25, 1953.)

*Messrs. Gottwald, Hershey & Hatch,* for appellant.
*Messrs. Wise, Roetzel, Maxon, Kelly & Andress,* for appellee.

DOYLE, P. J.  The Direct Transportation Company contracted with The Baltimore & Ohio Railroad Company to haul quantities of its freight from one of its freight stations in Akron, Ohio, to others of its freight houses, as well as to the freight depots of other connecting railroad lines in the cities of Akron, Barberton and Cuyahoga Falls, Ohio.  In part performance of the agreement, the independent contractor (Direct Transportation Company) parked four of its trailer units at the railroad company's freight house loading platform, for the purpose of being loaded, per contract provisions, by the railroad company's employees, under the supervision of the contractor.  Sometime shortly thereafter, before the loading commenced, a freight car, under the exclusive control of the railroad, was pushed off of the end of its track during a switching operation, and caused to collide with the contractor's trailers.  The trailers were substantially damaged.

In an action in tort for damage to the property in which the above facts were admitted, the trial court (the Court of Common Pleas of Summit County) found for the defendant railroad company, and based its judgment upon language in the contract—which language, under various circumstances, exempted the railroad company from liability to the contractor. We are here called upon to determine the propriety of the court's ruling.

The controversial paragraph in the contract is in the following words and phrases:

"8. Said contractor agrees to and does hereby release all his claims on account of injury to or death to himself, or damage to or loss of any of his property arising in any manner whatsoever in the performance of the obligations he has undertaken in this agreement, whether the negligence of said Baltimore Company contributed thereto in whole or in part."

1. It will first be observed that the law of exculpation does away with some of the legal incidents which arise from the creation of a legal relationship when the parties, by express contractual stipulation, so agree. In the case under consideration, if the facts are those stated in the pleadings—and we so find them— the liability for the damage sustained would seem to rest upon the railroad, in a suit brought by the independent contractor, unless the claimed exculpatory clause does away with the legal incident of liability for the railroad's negligence.

On the ground that there is neither disparity of bargaining power between the contracting parties nor a social reason for preserving the legal incidents of the relationship of the parties, we hold that they should be allowed in law to freely contract in reference to situations confronting them. Under this view of the contract, the exculpating provision in this case cannot be successfully challenged.

In II Restatement of the Law of Contracts, Sections 574 and 575, may be found the following terse rules, which we adopt for the case before us: •

"A bargain for exemption from liability for the consequences of negligence not falling greatly below the standard established by law for the protection of others against unreasonable risk of harm, is legal except * * *

"(1) A bargain for exemption from liability for the consequences of a wilful breach of duty is illegal, and a bargain for exemption from liability for the consequences of negligence is illegal if

"(a) the parties are employer and employee and the bargain relates to negligent injury of the employee in the course of the employment, or

"(b) one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation.

"(2) A bargain by a common carrier or other person charged with a duty of public service limiting to a reasonable agreed valuation the amount of damages recoverable for injury to property by a nonwilful breach of duty is lawful."

See: 37 Columbia Law Review, 248, and cases and texts therein cited; 175 A. L. R., 8, annotation; 12 American Jurisprudence, Contracts, Section 183; 38 American Jurisprudence, Negligence, Section 8; 29 Ohio Jurisprudence, Negligence, Section 11.

It is obvious that the facts of the case under review do not bring the case under any of the exceptions noted above.

2. Deciding, as we do, the legal effect of the exculpating provision, we next approach an interpretation of it.

The appellant has resorted to dictionary definitions

of various of the words used in arguing his claim that exoneration of liability of the railroad for its negligence is contractually given only for negligence committed by it in its work in fulfilling its part of the contract, and, in the instant case, that the railroad's negligence was not committed in fulfilling any of its contractual obligations.

We accept as a fact that words generally have several meanings, even in the dictionary. We must assume the obligation of determining, from the language used, what the words would mean in the mouth of a normal speaker of English, using them in the circumstances in which they were used. If the words used are taken in that sense, neither party can complain, for each party has notice that the other will understand his words accordingly.

It is specifically claimed by the appellant (plaintiff below) that the provisions of the exculpating clause are inapplicable because:

"(a) Direct Transportation Company was not in the act of performing its obligations under the contract at the time of the occurrence, and

"(b) The act of the railroad causing the collision had no connection whatsoever with the subject matter of the cartage contract."

Directing attention to (a) above, if we accept the appellant's analysis of the contractual phrase, "arising in any manner whatsoever in the performance of the obligations he has undertaken in this agreement," as meaning "arising in any manner whatsoever *during* the performance," etc., we still must conclude that, to the normal speaker of English, the phrase would control a completed part performance of the contract— *i. e.*, the parking of the trailers on the railroad company's premises for the purposes of being loaded by the railroad and later being hauled away by the contractor, and that, as a result thereof, the damage oc-

curred "during" the contractor's performance—*i. e.*, throughout the continuance and course of the contract. In other words, we hold that the contractor was performing its obligations under the contract when the damage occurred; and even though he had entirely completed the first step of his several obligations, he was nevertheless in the performance of his obligations.

In reference to appellant's claim under (b) above, it is argued that the trial court entirely ignored the significance of the phrase "whether the negligence of said Baltimore Company contributed thereto in whole or in part." It is urged that the word "contribute" means "give something, to a common purpose," etc. It is argued that "In the light of the meaning of the word 'contribute,' it would seem unequivocal that the negligent acts for which the railroad shall be relieved are those which contributed to the common purpose—namely, the cartage of the railroad's * * * freight. To hold as the trial court did, that paragraph 8 includes all negligent acts of the railroad, irrespective of their relationship to this common purpose of cartage, is to do violence to the general rule constituting the major premise of this syllogism."

The members of this court think contrarywise to this claim of the appellant. The contract relieves the railroad from liability for the contractor's property damage while the contractor is in the performance of his contract, regardless of the cause of the damage. "In any manner whatsoever" means, as stated by the trial judge, "however it may happen in the performance of the obligations he (the contractor) has undertaken." The word "contributed" as used in the contract refers to the damage, and not, as claimed, to the negligence of the railroad while it is performing its obligations under the contract of "cartage of the railroad's * * * freight."

It- is our conclusion that the exculpating clause of the contract relieves the railroad from liability, and that the trial court's judgment should be sustained.

*Judgment affirmed.*

STEVENS and HUNSICKER, JJ., concur.